# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MELANIE BRINER, et al., | ) | CASE NO. 1:07CV129 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| THE CITY OF ONTARIO, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court are motions for reconsideration filed by Defendants Timothy McClaran (Doc. No. 117) and City of Ontario (Doc. No. 125).[1] Plaintiff filed a brief in opposition (Doc. No. 122) which was subsequently supplemented upon the Court's request (Doc. No. 126). Defendant McClaran filed a reply brief. (Doc. No. 131.) For the reasons discussed below, the motions for reconsideration are **GRANTED** and summary judgment is entered in favor of the Defendants on all of Plaintiffs' claims, including the first amendment retaliation claim.

## I.

## PROCEDURAL BACKGROUND

On April 16, 2008, the Court issued a Memorandum Opinion and Order ruling on the various motions for summary judgment filed by the Defendants. As a result, all that remained for trial was a portion of Plaintiffs' claim asserting first amendment retaliation against Defendants City of Ontario and McClaran. *See* Doc. No. 115. No final judgment was entered and the Court was prepared to proceed with the jury trial already scheduled for May 19, 2008.

---

[1] The City's motion is one sentence and simply joins that of McClaran.

On April 18, 2008, Defendant McClaran filed a motion for reconsideration, asking this Court to reconsider the portion of its ruling that retained the first amendment retaliation claim for trial. Defendant asserted that "the Court may have misunderstood the chronology of events when it decided this issue." (Doc. No. 117, at 2.) Defendant pointed to two critical dates: March 11, 2005, the date McClaran notified Plaintiffs that he was temporarily removing their business, F&W Towing, from the City's towing list, and June 2005, the date when Plaintiffs posted yard signs critical of the Ontario police and McClaran. Defendant aptly argued that an event which occurred in June could not have motivated an event which occurred in March.

Shortly before the Court conducted a scheduled pretrial conference on April 21, 2008, Plaintiffs filed their opposition to the motion. (Doc. No. 124.) They argued that there is little room for reconsideration under the federal rules and pointed to *Helton v. ACS Group*, 964 F.Supp. 1175, 1181 (E.D. Tenn. 1997), as authority for the proposition that this Court's order should stand. During the pretrial conference, Plaintiffs further asserted that their Complaint encompasses free speech examples that go well beyond the posting of their yard signs.

The Court asked Plaintiffs to identify specific examples (other than the yard signs) when they engaged in free speech against McClaran which could have been the basis for retaliatory conduct in the form of removal from the City towing list and to file a supplemental opposition brief setting forth evidence from the record to prove their examples.

Plaintiffs filed a supplemental brief in opposition to the motion for reconsideration (Doc. No. 126) setting forth five examples.

## II.

## APPLICABLE LAW

2

Although Plaintiffs rely on *Helton*, *supra*, for the proposition that a motion for reconsideration may be granted only in very narrow circumstances, that case does not apply here. In *Helton*, the court had issued summary judgment in favor of the defendants. On plaintiff's motion for reconsideration, the court refused to set aside its ruling, concluding that arguments raised by the motion were simply a rehash of the arguments made in opposition to the summary judgment motion.

Here, unlike *Helton*, there has been no final judgment. The Court's ruling of April 16, 2008 merely narrowed the issues and eliminated some defendants. There is no final appealable order in this case. Therefore, under its inherent power to reconsider its own orders prior to final judgment, this Court is free to set aside any ruling that it now concludes was made in error. *See, e.g.*, *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 Fed.Appx. 942 (6th Cir. 2004).

## III.

## DISCUSSION

In its April 16th Memorandum Opinion, the Court properly characterized Plaintiffs' first amendment retaliation claim,[2] as follows:

> In their first claim, plaintiffs assert that by dropping Plaintiffs' business from the towing list and by pursuing the misdemeanor charges against Mrs. Briner, Defendants engaged in retaliation designed to discourage Plaintiffs from, and punish them for, exercising their first amendment rights to criticize the police.

*Id*. at 18. The Court then determined that pursuing criminal charges against Melanie Briner was not first amendment retaliation because there had been probable cause for bringing the charges against her. No party has challenged this finding of the Court in the briefing relating to the motions for reconsideration.

Rather, Defendants ask this Court to re-examine its ruling with respect to the allegation that Plaintiffs were dropped from the City towing list by McClaran in retaliation for exercising their first amendment right of free speech. Defendants assert that the only "speech" which Plaintiffs have pointed to is the yard signs which they posted in June 2005 whereon they publicly criticized the City police department in general and McClaran in particular. Since they were dropped from the towing list in March 2005, that action could not have been motivated by signs that had not yet been posted. The Defendants' motions argue that the Court "may have misunderstood the

---

[2] The First Amended Complaint is but one paragraph, captioned "First Claim - Retaliatory Conduct," which states in full, as follows:

> 62. The said acts by the Defendants, including the dropping of Plaintiffs' business from the towing list, and the vindictive prosecution of Melanie Briner, constituted unlawful retaliation, motivated at least in part by an intention to discourage and punish the Plaintiffs for exercising their constitutional rights, including the right to criticize the police. Such retaliation violates the First Amendment to the United States Constitution, and 42 U.S.C.§1983.

chronology of events when it decided this issue." (Doc. No. 117, at 2.) Indeed, that fact is true. Without any mention of this chronology, the Court ruled:

> McClaran testified at his deposition that he did not remove F&W Towing from the list because of Plaintiffs' criticism of the police department. (McClaran Dep. at 232.) This fact seems to be supported by the letter which Plaintiffs received wherein McClaran informed them that F&W Towing was being removed from the list. There, McClaran indicated that removal was the result of "questionable conduct on the part of F&W Towing." (McClaran Dep. at 81; Letter, Doc. No. 68 at 1.) He claimed that the Mansfield Police Department had also expressed concerns with F&W Towing's handling of vehicles and that he had heard about slow response time and missing vehicles, as well as other general complaints. (McClaran Dep. at 82-84.)
>
> Notwithstanding this testimony and the letter, the Court concludes that there is a factual dispute over whether McClaran was motivated by a desire to chill the Plaintiffs' exercise of their first amendment rights. The Court finds this dispute in the following short portions of McClaran's deposition where he was questioned about the nature of the "questionable conduct" that supposedly caused him to remove Plaintiffs' [sic] from the towing list.

(Doc. No. 115, at 19-20.) The Court then quoted from McClaran's deposition where he testified that he had removed F&W Towing from the City's towing list because of "[t]he conduct that they had towards us as a department in our investigations[,]" and "because of the way they [his officers] were treated [by Plaintiffs]." (Doc. No. 115, at 21.) In an abundance of caution and in the face of both a very vaguely pled complaint and even more vaguely argued motion briefs, the Court concluded:

> This testimony seems to suggest that Defendant McClaran was unhappy about Plaintiffs' criticism of his department and relied on that, at least in part, as reason to remove F&W Towing from the towing list. If that is true, then McClaran may have violated Plaintiffs' first amendment free speech rights.

(Doc. No. 115, at 21.) The Court decided to proceed to trial on what it *now* concludes is no more than a "mere [. . .] scintilla of evidence in support of Plaintiff's position[.]" *Anderson*, 477 U.S. at 252.

In opposition to Defendant's motion for reconsideration, Plaintiffs timely filed their supplemental brief setting forth the following five examples, with a partial listing of references to the record:

>   1. <u>December 28, 2004</u>: Plaintiffs went to the Ontario police station and complained about the department's investigation of a theft by former employee Billie Hamm, and about police bringing the suspect back into the business. They spoke to Defendant McClaran directly.
>
>   2. <u>January 25, 2005</u>: Plaintiffs went to the Ontario police station and complained about the department's investigation of a truck theft they had reported that day. Defendant McClaran was in the building, and Officer Hill reported the Briners' communications to him immediately.
>
>   3. <u>January 27, 2005</u>: Plaintiffs had delivered a letter to Defendant McClaran, providing information and again challenging the police department's position regarding its investigation. Defendant McClaran has testified that he received this.
>
>   4. <u>Mid-February, 2005</u>: Mr. and Mrs. Briner met face-to-face with Ontario Mayor Thom Durbin. They again complained about the police department's investigations, and that they were being mistreated by Defendant McClaran. The mayor said he would look into the situation.
>
>   5. <u>March 10, 2005</u>: Tom Briner called Defendant McClaran's superior, Service Safety Director Jim Hellinger, to again complaint [sic] about the police department's investigation of the two prior crimes against Plaintiffs. Defendant McClaran happened to be in Mr. Hellinger's office when the Plaintiff called. McClaran heard this communication, and the next day he removed the Plaintiffs from the tow list.

(Doc. No. 126, at 1-2.)

In response, Defendants correctly point to ¶ 62 of the First Amended Complaint, noting that it simply makes no reference to any of these instances as the basis for the first amendment retaliation claim. They argue that the specifics of Plaintiffs' first amendment retaliation claim have "developed" in response to Defendants' motions for summary judgment and that the supplemental brief with its five examples "is yet another example of this metamorphosis." The Court

6

agrees with Defendants.[3] Looking at the complaint alone, Plaintiffs have alleged that they were removed from the City's towing list because they posted yard signs critical of McClaran and his department. As Defendants correctly insist, given the factual chronology that the yards signs were posted three months *after* F&W Towing was removed from the list, obviously the signs could not have been the motivating factor for removal.

Of the five examples now presented by Plaintiffs, only two involve McClaran directly: December 28, 2004 and January 27, 2005. Neither of these examples illustrate anything that a reasonable person would attribute to be a basis for retaliation.

---

[3] In the Memorandum Opinion and Order of April 16, 2008, the Court actually had to devote a section to construing the meaning of the First Amended Complaint because it is so inartfully drafted that it is nearly impossible to ascertain both the nature of the claims and the specific facts supporting those claims, as well as the identity of the specific defendant against whom the various claims are made. Even at the time it was drafting its ruling, the Court had the feeling that it was being entirely too generous in its interpretation of the complaint. In their supplemental brief in opposition to the motions for reconsideration, Plaintiffs continue this pattern of vaguely stating and continually changing their allegations.

Plaintiffs testified that they went to the police station on December 28, 2004 to voice their complaints relating to the investigation of a theft that had occurred at their business which they attributed to a former employee, Billie Hamm. In particular, Mrs. Briner testified that her specific complaint was that an officer (in what is known as a "civil standby") had accompanied Hamm to F&W Towing, after the theft, to pick up his pay stubs. She had no complaints about the conduct of the officer; she merely wanted to find out why this occurred, since she had already voiced her suspicion to the officer investigating the theft that Hamm was the responsible person. When asked specifically whether she had felt intimidated during her very brief encounter with McClaran[4] in the lobby of the police department that day, she could not remember his response, "other than it wasn't a happy response." (M. Briner Dep. at 97.) Mr. Briner testified that McClaran acted like they were bothering him; however, he agreed that McClaran did speak with them even though they had no appointment, never told them to leave, and answered all their questions. (T. Briner Dep. at 98-99.) McClaran testified that he had no idea that the Briners were unhappy with the theft investigation until they posted their yard signs, long after he had removed them from the towing list. (McClaran Dep. at 71-72.) There is nothing in this encounter between the Briners and McClaran which would suggest a motive for first amendment retaliation.[5]

---

[4] She testified that it lasted only a couple minutes. (M.Briner Dep. at 83.)

[5] The Court is not even convinced that any speech which occurred on this occasion would constitute protected speech under the first amendment, which is aimed at protecting public speech in a public forum. Surely, every verbal complaint made to a government official does not rise to the level of protected speech. *See, e.g.*, *Helms v. Zubaty*, 495 F.3d 252, 256-57 (6th Cir. 2007) (the mere fact that a government official has an open-door policy does not convert the official's office into a public forum).

The second example directly involving McClaran was Mr. Briner's January 27, 2005 delivery of some witness statements relating to a truck allegedly stolen from their property. Although the Briners now claim the statements were accompanied by a letter complaining about wanting action with respect to their stolen truck, there is nothing to suggest that the letter even existed and, if it did, that it was anything more than a cover letter accompanying witness statements. Mr. Briner testified at his deposition that he either delivered witness statements to McClaran in a manilla envelope with nothing else, or, if there was a letter, it merely addressed the fact that it was accompanied by statements. (T. Briner Dep. at 30-32.) McClaran testified that he recalled a manilla envelope but does not recall what was in it and, in any event, he gave it to the officer investigating the alleged theft of the truck. (McClaran Dep. at 60-62.) This example simply fails to show that the Briners were complaining, much less that McClaran would have used this manilla envelope of statements as motivation to retaliate against them.[6]

A third example might be broadly interpreted as involving McClaran, namely, the March 10, 2005 telephone call by Mr. Briner to the Service Safety Director at a time when McClaran was coincidentally in the room and heard the conversation. Like the January 2005 encounter with McClaran at the police department, this telephone conversation lasted only a few minutes and was with Mr. Hellinger, not McClaran. Although it occurred the day before McClaran wrote his letter removing F&W Towing from the towing list, Plaintiffs have conveniently failed to point out that it happened on the very same day that Debra Hissong admitted making a false statement to the police.

---

[6] Once again, the Court questions how witness statements in a sealed envelope could constitute protected speech by the Briners (who were not among the persons who made the statements) especially if neither the statements nor the cover letter ever found their way into a public forum.

Hissong made her false statement at the behest of Melanie Briner, who drafted the statement, and on behalf of the Briners during the course of the investigation regarding an alleged theft of one of the Briners' vehicles. On March 10, 2005, she retracted her statement and suggested that she had felt forced by Mrs. Briner, her employer, to make the false statement. (McClaran Dep. at 140, 154, 217.)

The remaining two examples, which occurred on January 25, 2005 and mid-February 2006 did not even involve McClaran. On January 25, 2005, they spoke with Officer Hill. In mid-February, they made a face-to-face complaint to the mayor. There is no evidence that McClaran was even aware of these two encounters. Therefore, they could not have motivated his decision to remove F& W from the towing list.

The Court did misapprehend the factual chronology as it related to the Briners' yard signs and their removal from the towing list. Further, although the Court broadly and generously construed Plaintiffs First Amended Complaint and even gave Plaintiffs the opportunity to clarify their allegations in the context of the motions for reconsideration, it is now of the view that Plaintiffs have produced no more than a scintilla of evidence which would not suggest first amendment retaliation to any reasonable juror.

Accordingly, the Court, upon reconsideration, now grants summary judgment in favor of Defendants City of Ontario and McClaran on the only claim remaining for trial.

## IV.

## CONCLUSION

For the reasons set forth above, upon reconsideration of its Memorandum Opinion and Order of April 16, 2008 (Doc. No. 115), the Court grants summary judgment in favor of Defendants City of Ontario and Timothy McClaran on the sole remaining claim. The Court hereby **GRANTS** summary judgment in favor of these two Defendants on Plaintiffs' claim of first amendment retaliation.

Because this now resolves the entire case, the Court will issue a separate Judgment Entry closing the case.

**IT IS SO ORDERED**.

Dated: May 2, 2008

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**